# PROPOSAL

Submitted to:

**Jennifer Wedekind**
**ACLU of the Nation's Capital**

and

**Kathleen Carey**
**Office of the General Counsel**
**Washington Metropolitan Area Transit Authority**

Submitted by:
G. Patrick Gallagher
President
Gallagher-Westfall Group
April 1, 2015

1. **Purpose:** The Washington Metropolitan Area Transit Authority (WMATA) and the American Civil Liberties Union of the Nation's Capital. (ACLU-NCA) are agreed as part of the settlement of *Winslow v. Taylor*, No. 13-cv-0659 (EGS) (D.D.C) that there is to be a review of four years of arrests/detentions of juveniles and the accompanying use of force reports, and any record documenting injury, if such record exists. This review is to be conducted by an Independent Expert Consultant (IEC) to assess whether supervisors are identifying and addressing failures to follow policy and training, and whether managers are identifying errors in supervision along with the concomitant disciplinary procedures.

2. **Review:** The IEC will review reports by members of the Metropolitan Transit Police Department (MTPD) in police interactions with juveniles assessing whether or not they have complied with best practices. To this end, the IEC will assess and determine whether the MTPD:

   a. has promulgated policies, procedures and training materials in line with established best practices and whether policies and training are congruent with each other;
   b. policies and procedures are being carried out in actual operational situations;
   c. supervisors are identifying and addressing failures to follow policy;
   d. managers are identifying and addressing deficiencies in supervision;
   e. disciplinary procedures were initiated, when appropriate, based on the above reviews.

3. **This IEC review will be based on:**

   a. a random sampling of juvenile delinquency reports or other comparable documents used in the District of Columbia, Virginia and Maryland from the previous four years (2011-2014 inclusive);
   b. a detailed and comprehensive review of all Use of Force reports and any related Injury/Illness Reports involving juveniles for 2011-2014;
   c. review of any follow-up disciplinary or remedial actions undertaken by supervisors in connection with interactions involving juveniles for 2011-2014.

4. **Tasks of Data Collection and Analysis:**

   a. collect, review, analyze data on MTPD officers' interaction with juveniles and uses of force based on reasonableness according to best practices;
   b. review use of force training and training for interactions with juveniles;
   c. review MTPD policies;
   d. assess/review impact of policy and training on performance 2011-2014;
   e. produce an interim baseline report and provide copies to both WMATA and the ACLU-NCA.

2

If it occurs that based on this review the IEC finds that the policies, procedures and training materials are consistent with best practices and professional standards, and that those policies and procedures are being carried out appropriately by MTPD personnel, then the interim report would indicate this conclusion, and it would, in fact, become a final report.

5. **Task of Subject Matter Expert (SME) Identification:** At the point during 4. a-e above, if it is apparent that policy and training are not congruent or are deficient in that they fall short of accepted professional standards, the IEC will:

    a. identify a subject matter expert (SME) for work with MTPD to assist in review and/or revision of policy for dealing with juveniles;
    b. identify SME for development/delivery of training program to MTPD;
    c. work with departmental administration and the Office of General Counsel and SME to determine target audience in one of three modes:
        1. train-the-trainers,
        2. train-the-trainers and supervisors,
        3. train supervisors and all officers.
    
    The selected approach is to be determined in conjunction with departmental administration and MTPD counsel; sessions to include training in policy;
    d. work to have training and policy development/revision initiated, if deemed necessary, as early as possible;
    e. work with administration to make recommendations for dissemination of policy.

6. **Task of Assessing Progress:** Using the baseline data the IEC will evaluate the progress made by the MTPD in their interactions with juveniles in the aftermath of the training and policy revision and produce a final report.

    a. This report shall include any final recommendations;
    b. A preliminary final report shall be submitted to the chief of police and to the ACLU-NCA for review and informal comment at least 15 days prior to the issuance of the final report. The IEC shall consider the chief's responses and the responses by the ACLU-NCA and make appropriate changes, if any, before the final issuance of the report.
    c. It is understood that the final report can be delivered only after a sufficient amount of time after the completion of the policy revision (if necessary), policy implementation, and the training conducted by the SME for all designated personnel. It is suggested that at least six months of data should be utilized to balance against the data accumulated from 2011-2014.

7. **The IEC shall:**
    a. Conduct separate, initial, independent interviews with the MTPD chief of police who may be accompanied by counsel and/or other designated MTPD

      staff, with trial counsel for WMATA, and with the representatives from the ACLU-NCA.
   b. Have timely, full and direct access to MTPD files and records, including both open and closed files, for the purpose of this review.
   c. Have access to all discovery materials including all deposition transcripts from the litigation captioned *Stacey Winslow, as next friend to A.K. v. Leo Taylor.*
   d. Protect the confidentiality of the underlying investigations.
   e. Be provided with sufficient working space, office furniture, secure internet access, phones, secure storage, photocopying, faxing and scanning equipment.
   f. Be provided at the initiation of the work with electronic copies of all reports to be reviewed.

8. **The IEC may:**
   a. Conduct a one-day training session with key MTPD staff and WMATA risk management personnel on successful police organizational risk management.
   b. This one-day session will concentrate on the management and supervisory steps forming the process which must be implemented to raise the level of performance in all tasks carried out by MTPD personnel with the objective of reducing the impact of liability. The day's program can be applied directly to overall improvement of performance as well as directly to the oversight of the MTPD's interaction with juveniles.
   c. MTPD would duplicate all necessary handouts for any training.
   d. MTPD will provide a suitable training environment.

9. **Professional Services:**
   a. The fees for the IEC's services on a daily basis are $1600 per day.
   b. The IEC will bill WMATA for the costs of travel, mileage, meals and accommodations, parking, etc.
   c. Travel time is not billed.
   d. Invoices will be provided on a monthly basis.

10. **A Suggested Approach:**
   A considerable amount of time will be consumed by the extended efforts at gathering the data from four years (2011-2014) from event reports even on a random basis and then accumulating the data from the use of force reports for that same period. An economy is proposed to allow the IEC to have a staff person assist in this task, billed at a lower daily rate ($1000) to curtail costs and to expedite the eventual analysis. This arrangement is exclusively for the compilation of data, and not for the analysis of that data or for the development of any opinions.

      The person would be Mary Kealoha, vice president of the Gallagher-Westfall Group, who is experienced in this task, and who was a member of the federal monitoring team providing oversight for the New Jersey State Police consent decree. She was tasked

4

with making sure that the NJSP was in compliance with all training standards. Recently she was named to the monitoring team to assure compliance with all standards for the city of Albuquerque and its Police Department's settlement agreement with the Department of Justice.

11. **Documents:** While the review of the juvenile delinquency reports and accompanying use of force reports will present the IEC with a two-dimensional picture of MTPD activity with juveniles, there are other documents that will serve to complete a fully formed opinion of the requested factors in 2. c-e inclusive above. These documents shall be provided to the IEC in hard copy and are as follows:
    a. all current policies dealing in any way with interactions with juveniles such as care, custody, and transportation;
    b. all current policies dealing with use of force to include requirements for filing a use of force report if this is not contained in the use of force policy.
    c. all current policies describing the responsibilities of supervisory and management personnel to process, review and evaluate use of force;
    d. basic law enforcement training (BLET) curriculum with lesson plans detailing the treatment/detention/arrest of juveniles and lesson plans for all levels of uses of force;
    e. description of Field Training Officer (FTO) program with sections if any on interactions with juveniles;
    f. all complaints filed by or for juveniles as a result of interactions with MTPD officers and their dispositions from the previous four years (2011-2014 inclusive);
    g. summary of all lawsuits, if any, filed as a result of MTPD interactions with juveniles;
    h. from the list of 200 Specialized Training courses which officers are offered, copies of any courses dealing with juveniles;
    i. documents related to *Stacy Winslow as next friend to A.K. v. Leo Taylor*.
    j. disciplinary actions (counseling, remediation, formal reprimands, suspensions) as a result of management reviews in juvenile arrests.
    k. all forms utilized by MTPD officers for juvenile arrests in the District of Columbia, Maryland and Virginia.

IEC agrees to main the confidentiality of the documents reviewed and to return or destroy all confidential documents as identified by the parties upon presentation of the final report.

12. **Staffing:**
        All work on the review, the determination of the adherence of training and policies to national standards, and recommendations will be done by G. Patrick Gallagher. If acceptable to WMATA and the MTPD, Mary Kealoha would only assist in the compilation of data but no analysis. (See attached biographical sketches.)

If this proposal is acceptable, please so indicate by signing below.

### ACCEPTANCE

The parties hereby agree to the above terms for a review of Metro Transit Police Department policies and procedures regarding juveniles by an outside expert consultant, as part of the settlement of *Winslow v Taylor*, No. 13-cv-0659 (EGS) (D.D.C).

| _/s/_ Arthur B. Spitzer | _/s/_ Kathleen A. Carey |
|---|---|
| Arthur B. Spitzer | Mark Pohl |
| Jennifer Wedekind | Kathleen A. Carey |
| American Civil Liberties Union | Washington Metropolitan Area |
| of the Nation's Capital | Transit Authority |
| Counsel for Plaintiff | Counsel for Defendant |

I, G. Patrick Gallagher, hereby agree to conduct a review of Metro Transit Police Department policies and procedures regarding juveniles pursuant to the above terms, as part of the settlement of *Winslow v Taylor*, No. 13-cv-0659 (EGS) (D.D.C).

_/s/_ G. Patrick Gallagher
G. Patrick Gallagher
Gallagher-Westfall Group

Independent Expert Consultant

6

**G. Patrick Gallagher**, currently president of the Gallagher-Westfall Group, is a nationally recognized expert in law enforcement liability. In October of 2014 he published **Successful Police Risk Management** and in January of 2015 he was named deputy monitor for the oversight of the settlement agreement between the U.S. Department of Justice and the Albuquerque Police Department.

Gallagher has conducted hundreds of training sessions focusing on high risk/critical tasks such as pursuit and uses of force for police supervisors, managers and chiefs of police in all 50 states. He has conducted risk assessments, audits, investigations, and management reviews for law enforcement agencies focusing on evaluations of their operations, policies and procedures, management and leadership styles, organizational climate and generally any factor that might contribute to the presence of potential or actual liability in those organizations. Gallagher's training programs have also focused on leadership development, management and supervisory responsibilities and policy development. Furthermore as an expert witness, close to 60 percent of his more than 130 cases have dealt with the use of deadly and less-than-lethal force while about 30 percent has dealt with pursuits and the emergency operation of vehicles.

For most of the year 2010, Gallagher was Director of Campus Safety and Police for Moravian College in Bethlehem, Pa. where he headed up the Department composed of police and security officers. During this period he reorganized their Policy Manual, developed critically needed policies, focused on personnel issues, and regularized the certification of its officers.

Previously Gallagher was appointed Director of Criminal Justice Standards and Training for the state of Florida by then Governor Bob Graham in 1980 where he administered the policies established by the Criminal Justice Standards and Training Commission and was responsible for enforcing standards of employment, training and all certification requirements for all of the state's police and corrections officers. Furthermore he enforced standards for all training centers, all curricula, and all instructors while also dealing with the decertification of officers who did not maintain original standards. In other positions, Gallagher was Director of the Police Executive Institute at the Police Foundation in D.C. providing executive development programs to the country's largest law enforcement agencies. Finally he was also Director of Public Safety in South Bend (IN) for the police and fire departments.

Gallagher's 1992 book was **Risk Management behind the Blue Curtain: A Primer on Law Enforcement Liability**. He has also co-authored **Behind the Uniform**, a study of comparative policing. He has been a columnist for the British Police Review, has authored numerous articles dealing with police liability, and has produced a syndicated column on police liability in the U.S. He has been a member of the International Association of Chiefs of Police, the Police Executive Research Forum, the National Association of Internal Affairs Investigators, the American Society of Law Enforcement Training, the Public Risk Management Association, and the International Association of Directors of Law Enforcement Standards and Training. Gallagher received his BA from Marist College, his MA from New York University, and completed his Ph.D. course work at Purdue University.

**Gallagher-Westfall Group   P.O. Box 310       Springtown, PA. 18081**
**Ph: 610/346/6637      Fax: 610/346/6671    www.gallagherpoliceexpert.com**

**Mary Kealoha** is currently vice-president of the Gallagher-Westfall Group. She has recently been named an associate monitor for the settlement agreement between the U.S. Department of Justice and the Albuquerque Police Department.

Mary Kealoha has also recently concluded a nine-year role as an associate monitor of the federal monitoring team under Dr. James Ginger overseeing the consent decree required by the federal court of the New Jersey State Police. In her role on the team, Mary was totally responsible for all of the standards relating to the department's required compliance dealing with training issues to include basic, supervisory, and management training; cultural diversity; legal issues; field training; and finally course development, delivery, evaluation and implementation.

Kealoha's major interest lies in personal and professional development as it relates to leadership, performance excellence, creativity and innovation. In her leadership and management workshops her focus is on self-assessment and self-mastery of the knowledge, skills, and abilities necessary to be a fulfilled human being and a successful leader.

Topics addressed include leadership characteristics, roles, responsibilities, and skills. Additionally she addresses personal and organizational missions, vision, values, and beliefs along with organizational processes, structure, culture, and climate. She sees critical thinking and creative problem-solving tools and techniques that generate planned innovation, team building, decision-making, strategic planning and change implementation as being the qualities and capabilities that the successful leader possesses.

Mary Kealoha has conducted leadership, team building, and strategic planning training and has participated in management studies for a number of law enforcement agencies in addition to the New Jersey State Police. A selected list includes: the Bethlehem (PA) P.D., Miami (FL) P.D. Command Staff, Charlotte (NC) P.D., Florida Department of Law Enforcement, Charlottesville (VA) P.D., Connecticut P.O.S.T., Dutchess County (NY) Sheriff's Department and Poughkeepsie P.D., Muskogee (OK) P.D., Boca Raton (FL) P.D., and the Texas Municipal League.

Mary Kealoha has also been coordinator of the Multi-Disciplinary Child Abuse Teams in the state of Florida, served as a nurse in hospital nurseries, and worked with the hospice program in northern Virginia. She received her B.S. and R.N. from San Jose State University and her M.A. in Education from California State University at Sacramento.